The Full Commission has reviewed the prior Decision and Order of Deputy Commissioner Hedrick based on the record of the proceedings. The appealing party has not shown reversible error or grounds to remand for rehearing. The Full Commission MODIFIES and AFFIRMS the Decision and Order of the Deputy Commissioner. The Decision and Order is modified to include additional findings and to address the issue of negligence, as follows:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The alleged negligent employees of defendant were at all times relevant to this claim acting within the course and scope of their employment with defendant.
4. If plaintiff sustained damages as a result of negligence on the part of a named employee of defendant, the amount of those damages is $100,000.00.
5. The deposition testimony of Janet Roberts is admitted into evidence.
6. A set of six exhibits including the deposition of Dr. Engel, defendant's responses to discovery, defendant's policies regarding client's rights, annual habilitation plans for James Eugene Austin, James Price's personnel records and James Price's death certificate, collectively marked as Stipulated Exhibit Number Two, are admitted into evidence.
7. The medical records of James Eugene Austin from Dr. Engel and East Carolina University, marked as Stipulated Exhibit Number Three, are admitted into evidence.
***********
Based upon all of the competent evidence of record, the undersigned makes the following additional
 FINDINGS OF FACT
1. Plaintiff's decedent (hereinafter, "decedent") was born on 7 February 1956. As a result of an illness during infancy, decedent sustained brain damage that left him severely mentally retarded. Decedent lived with his natural parents and a female sibling until he was eleven years of age. At that time, decedent required care and supervision twenty-four hours per day and his family was no longer able to provide this necessary care.
2. As a result of his mental impairment, Decedent was unable to speak or make informed decisions. He communicated with grunts and gestures. He was able to eat, dress and toilet independently, although he needed to be reminded periodically to use the men's room. At times, decedent was behaviorally aggressive. Decedent exhibited his aggressive behavior by pinching, scratching, pushing, pulling or hitting other individuals. He also exhibited aggressive behavior by throwing or breaking objects. Despite his mental impairment, decedent possessed a natural human sex drive.
3. Defendant is a state-operated institution providing care and treatment for patients with mental retardation. Defendant is located in Kinston, North Carolina. Decedent became a patient and resident of defendant on 17 January 1967. Decedent was a patient of defendant from 17 January 1967 until 14 February 1977, when he was transferred to Cherry Hospital in Goldsboro, North Carolina, a separate state facility. Cherry Hospital provided psychiatric treatment for individuals with mental retardation who also had diagnoses of mental illness. Psychiatric care was not available at defendant facility. Decedent remained in Cherry Hospital until 1 March 1977, when he was returned to the custody and care of defendant.
4. Due to behavioral problems, decedent was again transferred to Cherry Hospital on 28 March 1978. From that date until 27 November 1986, decedent resided on the Cherry Hospital campus. For most of this time, he resided at the "Caswell Annex," which was so named because the majority of patients were transferred there from defendant facility in Kinston. Decedent was in the custody and under the care of Cherry Hospital between 28 March 1978 and 27 November 1986, except for those times when he was released into the custody of his parents and on one occasion when he escaped or "eloped" from the Cherry Hospital campus for approximately twenty-four hours. Decedent's whereabouts and activities during this twenty-four hour period are unknown.
5. Decedent was transferred back to defendant facility in Kinston on 27 November 1986. By 1991, decedent had "full blown" AIDS. Decedent remained in defendant's care until his death on 28 July 1993. Decedent's immediate cause of death was pneumonia, which was a consequence of acquired immunodeficiency syndrome (hereinafter AIDS).
6. AIDS is an infectious disease that is caused by the human immunodeficiency virus (HIV). There are three means by which a person may become infected with HIV: unprotected sexual activity, contact with infected blood or blood products, and transmission from mother to baby. AIDS progressively depresses the human immune system and thereby exposes the body to other infections that cause illness and death.
7. Persons infected with HIV may develop AIDS within two years of their infection date. Other persons may not develop AIDS within fifteen years after becoming infected with HIV. Although it is reasonably certain that decedent contracted the HIV virus by unprotected sexual activity, there is no method of showing to a reasonable degree of medical certainly either when he contracted the HIV virus or from whom. It is more likely than not that decedent contracted the HIV virus in approximately 1981, when he was a resident at the Caswell Annex at Cherry Hospital. It is less likely that decedent contracted the HIV virus after 1986, when he was returned to defendant facility in Kinston.
8. There is evidence in the record that Caswell Annex was under defendant's "administrative authority" or "administrative supervision" during intermittent periods of time, including some period of time when plaintiff was residing at Caswell Annex. It appears that this "administrative authority" may have occurred primarily during transition periods when patients were being transferred between facilities. There is insufficient evidence that defendant was administratively responsible for the staff at Cherry Hospital or Caswell Annex at any pertinent or particular period of time. The fact that defendant's director, Mr. Woodall, had administrative duties which included responsibility for "the conduct of employees," means nothing more than that he was responsible for employees in Kinston. Mr. Woodall was never responsible for personnel matters at the Caswell Annex.
9. The fact that decedent contracted sexually transmitted diseases, including the HIV virus, does not prove negligence by defendant. Plaintiff was required to show a breach of duty which proximately caused plaintiff's injuries. Although it is clear that a dreadful incident occurred, there is insufficient proof that it occurred because of a breach of duty at the Caswell Annex or at the Caswell Center. Without this proof, whether Cherry Hospital was the legally responsible entity, and thus a proper defendant, is a moot issue.
10. There is insufficient evidence that plaintiff contracted the HIV virus from any of defendant's employees or any employee at Caswell Annex.
11. Defendant's response to plaintiff's interrogatories 11a and 11b is not an admission that defendant was legally responsible for decedent's care while decedent was at Cherry Hospital or the Caswell Annex. The responses to the interrogatories are confusing, and the confusion is further compounded by defendant's response to interrogatory 12. However, plaintiff did not reasonably rely on these responses to her detriment. Defendant's responses indicate that decedent was not in defendant's care when he resided at places other than defendant's facility.
12. All of the employees named in plaintiff's complaint were employed at defendant's facility in Kinston.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. By virtue of defendant's responses to plaintiff's interrogatories, defendant is not estopped from denying responsibility for the care of plaintiff's decedent while decedent resided at Cherry Hospital and at the Caswell Annex.
2. There is insufficient evidence that plaintiff was injured by the negligence of defendant. G.S. § 143-291.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be and is hereby DISMISSED.
2. Each party shall bear its own costs.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER